BOYER FIRE APPARATUS COMPANY, Complainant, v. TOWN OF BRUCETON, Defendant.

Western Section.   July 13, 1932.

Petition for Certiorari denied by Supreme Court, March 18, 1933.

Maddox & Maddox, of Huntington, for appellant.

John T. Peeler, of Huntington, and S. L. Peeler, of Camden, for appellee.

SENTER, J. The bill in this cause alleges that the Town of Bruceton is indebted to complainant in the sum of $4,760 for the purchase of a fire engine, fire hose, and other apparatus sold by it to the defendant, under a contract entered into between the officials of the Town of Bruceton and the complainant on the 23rd day of May, 1930, and that said fire engine and the apparatus was delivered by complainant to the defendant in the town of Bruceton on August 1, 1930, and that a check was given to the complainant by the de-

fendant, which check was signed by the Recorder of said town; that the check was returned to complainant unpaid, and upon defendant's refusal to pay said check or said debt, complainant filed this suit.

The defendant filed an answer by which it denied that it had purchased said fire engine, chemical tank, fire hose, etc., from complainant, and denied that it agreed to pay to complainant said sum of $4,760, and denied that complainant had delivered the said fire engine, etc., to defendant on the 1st day of August, and denied that said fire engine and apparatus had ever been accepted by the town of Bruceton, but that the officials of said town had notified the complainant that it had not and would not accept said fire engine, etc., and denied any liability. Upon these issues the cause was tried before the Chancellor on the pleadings and the evidence, resulting in a decree in favor of complainant and against the defendant for the amount of $4,760 principal, and $416.50 interest, making a total judgment decreed of $5,176.50, and the costs of the cause. From this decree the defendant prayed and was granted an appeal to this court and has assigned errors.

The assignments of error are numerous, but are in substance as follows: (1) That the Chancellor erred in sustaining complainant's bill and decreeing a judgment against the defendant for $4,760 and the interest and costs; (2) that the Chancellor should have dismissed complainant's bill at the cost of complainant; (3) that the Chancellor was in error in holding that the City ordinance authorizing the issuance of bonds for "Water Works System Complete," contemplated and included the purchase of fire equipment; (4) that it was error for the Chancellor to decree that an ordinance was not necessary to authorize the purchase of this fire engine and equipment, other than the ordinance authorizing the bond issue for the installation of the water works system; (5) that the Chancellor erred in failing to decree that no valid ordinance was passed by the Board of Aldermen setting aside a fund for the purchase of the fire truck and equipment, and in failing to hold that the Board of Aldermen did not provide a method for raising the money with which to pay for said fire truck, and that the action of the members of the Board in attempting to make the purchase was void and unauthorized; (6) that the Chancellor erred in failing to decree that in order for the town of Bruceton to legally purchase the fire engine or truck it was necessary that a valid ordinance be passed by the Board at three successive meetings, authorizing the purchase and providing the funds with which to pay for same; (7) that the Chancellor erred in failing to hold that the general laws of the State of Tennessee

were applicable, and that under said general law it was necessary that an ordinance be passed authorizing the purchase to make it valid; (8) that the Chancellor erred in holding that the attempted purchase had been ratified by the Board of Aldermen at a regular meeting; (9) that the Chancellor should have held that the action of the Board of Aldermen at the meeting of June 12, 1930, when a ratification of the contract of the individual members of the Board in attempting to purchase the fire engine, etc., was irregular and void, and was by a mere motion, not in writing and of no legal effect or force; (10) that the Chancellor should have held that the attempted ratification by the Board of the contract by a motion, was in fact a resolution, and therefore subject to the veto power of the Mayor; (11) that the Chancellor erred in failing to hold and decree that the veto of the Mayor was valid, because there was no effort to repass the resolution after it had been vetoed by the Mayor; (12) that it was error for the Chancellor not to hold that the Mayor had the right under the charter of the town of Bruceton to veto the motion or resolution; (13) that the Chancellor erred in failing to hold that the action of the Board on August 14, 1930, directing the Recorder to notify complainant to deliver the fire truck, and also the action of the Recorder in wiring complainant to deliver the truck was of no legal consequence, and was unauthorized and void; (14) that the Chancellor erred in holding and decreeing that the fire engine or truck was accepted by the Town of Bruceton, by anyone with authority to accept it; (15) that the Chancellor was in error in holding that the check issued by the Recorder in payment of said fire truck was issued with authority; and (16) that the Chancellor was in error in not holding that the construction of the water work system and the maintenance of the fire department were separate governmental functions, and that an ordinance providing for the building of the water works system could not be construed as including the authority to purchase fire fighting equipment; and that two separate ordinances were necessary.

The Town of Bruceton is an incorporated municipality under Chapter 306 of the Private Acts of 1925, and vests the usual duties, powers and authority in a Board of Mayor and Aldermen, and authorized the municipality to purchase or otherwise acquire and hold property for the erection "operation and maintenance of water works, light and power plants, pest houses, or other improvements for the welfare of the inhabitants of said town." By Chapter 50 of the Public Acts of 1913, towns of the population of Bruceton are authorized to issue bonds for certain stated improvements. Under the authority of this general Act, the Board of Mayor and Aldermen

of the town of Bruceton regularly passed an ordinance providing for an election to be held submitting the question to the voters of the town as to whether said town would issue its interest bearing coupon bonds in the sum of $45,000, the proceeds to be expended for the installation of a water works system for said town. This ordinance sets out the form of the bond and interest coupons, and provides for tax levies on the taxable property in the municipality to create a fund with which to pay the interest and principal of said bonds, and provides for the sale of the bonds. The election was held and resulted in favor of the issuance of the bonds to the amount of $45,000 for said purposes. Whereupon, the Board of Aldermen passed another ordinance authorizing and directing the issuance and sale of $45,000 of the interest bearing coupon bonds of the town of Bruceton, and providing the rate of interest and the term for which said bonds would run, and the date that said bonds should bear, and to be styled "Water Works Bonds," and the ordinance provides that the proceeds from a sale of the bonds shall be used exclusively for the installation of a water works system for the town of Bruceton. After this ordinance had been passed, on April 4, 1930, the town of Bruceton caused publication to be made of notice to contractors. This notice states in part as follows:

"Notice is hereby given that sealed bids will be received by C. L. Reed, City Recorder, Bruceton, Tennessee, up until 10:00 o'clock, A. M., April 10, 1930, for the furnishing and installing of complete water works system, as per plans and specifications now on file in the office of the City Recorder, Bruceton, Tennessee."

There was on file an engineer's estimate of the quantity, character and type of work to be done, and the materials and items to be purchased. This estimate included the water pipe of different sizes; valve boxes of different sizes; water meters and meter boxes; two-way fire hydrants; fire hose and a fire truck. The advertisement also provides for the erection of elevated tanks, wells, pumping equipment, etc., and is signed by the town of Bruceton. Pursuant to this advertisement the complainant, Boyer Fire Apparatus Company, addressed a communication to the Mayor and City Council of Bruceton, submitting a proposal or bid for the furnishing of a combination hose and chemical engine or apparatus, stating the size and the type of chassis, including 1200 feet of fire hose, couplings, and all equipment mounted on the chassis, and to be according to specifications, for the sum of $4760. Other matters were referred to in the proposal. At a meeting of the Board of Aldermen held on April 10, 1930, certain contracts were authorized and entered into for the construction of the water works system, but at that time and at that meeting, which was

after the bonds had been sold, the purchasing of the fire truck and equipment was deferred by the Board upon motion, two members of the Board voting for the purchase at that time, and two to defer action, and one member of the Board being absent, the Mayor was authorized to and did cast the deciding vote to defer action in the matter of the purchase of the fire truck and equipment, it being a tie vote. The minutes of that meeting do not disclose that the bid of complainant was refused, but simply deferred action in the matter of making the purchase of the equipment at that time. Nor does it appear from the minutes of that meeting that any question was made with reference to the authority of the Board to contract for the purchase of the fire equipment as a part of the general system of water works authorized under the ordinances.

Some time subsequent to this meeting a representative of complainant went to Bruceton and took the matter up with the members of the Board of Aldermen with the view of obtaining a contract for the purchase of the fire fighting equipment. He went to a member of the Board who was favorable to the purchase, and to him submitted a contract and specifications, and this member of the Board, in company with the representative of complainant, called on the other members of the Board of Aldermen, and each of them signed the contract. This was not done in a Board meeting. At the next meeting of the Board of Aldermen, a motion was made and unanimously adopted by the Board of Aldermen ratifying the contract which they had previously signed for the purchase of this fire engine and equipment, and the action of the Board on said motion was duly entered on the minutes of that meeting. The Mayor was present at the meeting, and so far as the record discloses, did not make any objection at the time. However, at the next meeting of the Board, the Mayor presented to the Board of Aldermen a written communication, and in which the mayor expressed his disapproval of the purchase of the fire engine and equipment, and claimed that he had the right of veto, and accordingly vetoed the motion passed by the board at the previous meeting ratifying the contract of purchase. The board of aldermen disregarded this alleged veto, but proceeded to direct the recorder to advise complainant to ship or deliver the fire truck and apparatus on the terms as set forth in the written contract which they had each previously signed. The mayor discontinued attending meetings of the board of aldermen from that time until after another election held in the town of Bruceton for the election of the mayor and the board of aldermen. The charter of the town of Bruceton provides that in the absence of the mayor, the recorder shall preside at board meetings. Pursuant to this authority the recorder did preside at the subsequent meetings in

the absence of the mayor, and it was at one of these meetings that the board of aldermen directed the recorder to have the truck and equipment shipped or delivered to the town of Bruceton. Pursuant to this direction, the recorder advised complainant to ship the truck, and it was accordingly delivered by complainant to the town of Bruceton. One of the controverted questions is as to whether or not the truck was ever legally accepted by any authorized agents of the town of Bruceton. Upon the arrival of the truck the recorder, pursuant to instructions from the board of aldermen, drew a check payable to complainant for the purchase price amounting to $4,760, and signed the same as recorder. The charter provides that the mayor shall countersign all checks, and the recorder presented the check to the mayor for his signature also. The mayor refused to countersign the check, whereupon, the recorder, acting upon his assumed authority, the mayor having discontinued attendance at board meetings, countersigned the check. By direction of the mayor, the bank upon which the check was drawn, and where the city's deposit was kept, returned the check unpaid. The fire truck in the meantime had been stored in a garage in the town of Bruceton.

The chancellor held that the authority to purchase the fire truck and pay for the same out of the proceeds of the bond sale was included in the general purposes of the bond issue ordinance to provide "a complete water works system." This holding of the chancellor was based upon the proper construction to be given the enabling ordinance authorizing the issuance of the bonds upon an election being held and resulting favorably to the issuance of the bonds, and upon the interpretation given the ordinance by the town of Bruceton, through its board of mayor and aldermen, and the city engineer who prepared the plans and specifications and items to be purchased for the installation of a complete water works system, and also by the advertisement for bids, which included the submission of bids for fire engine and apparatus; and also from the specifications in the list of items, calling for the installation of fire plugs.

We are of the opinion that the chancellor reached the correct conclusion in so holding. We think it clear from the record that the mayor so construed the ordinance as to include the purchase of the fire engine and equipment. It is true that after the publication of the advertisement or notice, which included the purchase of a fire engine and equipment, the mayor and two members of the board of aldermen decided to defer for the present the purchase of a fire engine. This action does not seem to have been predicated upon any theory entertained by the mayor and the two aldermen voting to defer, that such a purchase was not embraced in and contemplated by

the ordinances for the installation of a complete water works system. Mr. Lowe, the mayor, admits that he understood that the ordinances provided for the installation of a complete water works system, and in effect concedes in his deposition that that was the construction placed upon the ordinances by the board. The five members of the board of aldermen decided that it was expedient to buy this fire truck and apparatus, and they each signed the contract for its purchase. This was not done at a board meeting, but when the board met, a motion was made to ratify and confirm the contract which they had signed. The mayor, Mr. Lowe, was present at that meeting, and so far as disclosed by the minutes, offered no objection.

By certain of the assignments of error it is contended that it would require a separate ordinance authorizing the purchase of fire fighting equipment, and that the installation and operation of a water works system was one governmental function, and the installation of fire fighting equipment was a separate governmental function, and would therefore require a separate ordinance, to be passed on three separate readings at three separate meetings of the board, as any other ordinance passed by the board. And it is further contended that in order to make the ordinance valid and legal, provision would have to be made for raising the funds with which to pay for same. We do not agree to this contention as applicable to the facts of this transaction. Among the governmental functions of a municipality is to make provision for the protection of property against destruction by fire. The installation of a *complete* water works system, is sufficiently broad in itself to include fire plugs and fire fighting equipment, if the installation of a water works system is to serve one of its most important purposes, that is to protect the property of the citizens of the municipality against loss by fire. While in an abstract sense it may be the exercise of a separate governmental function to buy fire fighting equipment, as, for instance, where there has already been installed and in operation a water works plant by the municipality, or by a private corporation, or individual under a franchise, and it is desirable to add to present fire fighting equipment, or to purchase new equipment. But, where there is a bond ordinance passed authorizing the sale of bonds by the municipality to install a complete water works system, in a town where there is not already in operation a water works system, and in order to make the water works system complete for the purpose of serving all its purposes, the installation of fire fighting equipment as an incident to the completion of a water works system, would be as much authorized as the installation of fire plugs, or water meters. The object is not only to supply water for domestic purposes, and drinking purposes, but as a protection against fire, and to obtain a lower rate of insurance

on property within the municipality, and in order to complete the water works system, we think fire fighting apparatus, comes reasonably within the purposes of the bond issue, and the ordinances authorizing the issuance and sale of the bonds.

By other assignments of error it is contended that the attempted ratification of the contract signed by the individual members of the board for the purchase of this equipment, could in no event be accomplished by the adoption of a mere motion, and that the motion must be treated as a resolution, and in which event the mayor has the right of veto by specific provisions of the charter of the town.

We do not think this contention can be sustained. We think the matter of contracting with complainant for the purchase of this truck, after its purchase had been authorized by an ordinance, and included within the ordinance passed with reference to the installation of a complete water works system, did not require the passage of another ordinance authorizing the purchase. This was purely an administrative act in no sense legislative. (2 Dillon Municipal Corporation (5 Ed.), secs. 571-572.) By the authority just referred to it is said that a resolution is an order of the council of a special and temporary character, while an ordinance prescribes a permanent rule of conduct or government. If the resolution is legislative in its nature or character, and not merely administrative, the mayor does have the right of veto. Richardson v. Young, 122 Tenn., 471, 125 S. W., 664. If a resolution is not legislative in its character and merely administrative, the mayor would not have the right of veto under the charter provision on the subject.

We are therefore of the opinion that the action of the board of mayor and aldermen in ratifying the contract which had been signed by the members as individuals, and which was done by the adoption of a motion to so ratify the contract, was an administrative act and was an order duly passed by the board of aldermen, and over which the mayor did not have the power of veto.

This truck was delivered to the town of Bruceton by complainant by the order of the board of aldermen instructing its recorder to advise delivery. When it reached Bruceton it was placed in a garage, and the recorder and board of aldermen accepted the truck, and attempted to pay for it by issuing the check of the town of Bruceton payable to complainant. This check was signed by the recorder, and we think operated as an acceptance of the truck. It therefore becomes immaterial whether the check was good without the counter signature of the mayor, who refused to sign it. The fact remains that the recorder and the board of aldermen ordered this truck delivered to the town of Bruceton, and the truck was so delivered. Upon its arrival it was placed in a garage in the town of Bruceton, and the board of aldermen attempted to pay complainant for the truck.

This, we think, constitutes a delivery and acceptance. It was delivered by complainant to the town of Bruceton, and the recorder, acting under the authority of the board of aldermen, accepted the truck. We think the authority was with the board of aldermen to complete the purchase, and acceptance of the truck.

The mayor is charged with certain duties and responsibilities of office, but his duties are those of an executive. He is the executive head of the municipality. The board of aldermen is the exclusive legislative body, and is also charged with administrative duties. The right or power of veto is the only restraint or control which the mayor has over the board of aldermen, and this can only be exercised in vetoing a Legislative act.

It results that we find no error in the decree of the chancellor, and all assignments of error are overruled, and the decree of the chancellor is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.